UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ROMAC ENVIRONMENTAL SERVICES LLC | CASE NO. 6:20-CV-00581 LEAD |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| WILDCAT FLUIDS LLC | MAGISTRATE JUDGE CAROL B. WHITEHURST |

MEMORANDUM RULING

Presently before the Court is the Motion for Partial Summary Judgment [ECF No. 131] filed by Romac Environmental Services, LLC ("Romac"). The motion seeks partial summary judgment on the open account claim asserted by Romac against Defendant, Wildcat Fluids, LLC ("Wildcat"). Wildcat opposes the motion.

I.
BACKGROUND

Romac is a limited liability company engaged in the business of leasing equipment along with other business activities.[1] Wildcat is an oilfield equipment and services company providing services and rentals primarily pertaining to the completions and drill-out stage of oil and gas production.[2] In early 2018, Romac and Wildcat agreed for Romac to lease certain rental equipment and services to Wildcat, and Wildcat agreed to pay for rental equipment and services provided by Romac, specifically the DEL manufactured Sandcat, in accordance with established stipulated rates.[3] In May of 2018, Wildcat began leasing equipment and requesting services from Romac,

---

[1] ECF No. 131, Exhibit A, Affidavit of John E. McElligott, Jr. ("McElligott Affidavit") at ¶ 4.
[2] ECF No. 131, Exhibit B, Plaintiff's Original Complaint, Cause No. 2:20-cv-00089 (USDC, Southern Dist. of Texas, Corpus Christi Division), at ¶¶ 16-17.
[3] McElligott Affidavit, at ¶ 5.

1

and Romac began invoicing Wildcat on a monthly basis for rental equipment and services that Romac provided.[4] On June 13, 2018, the parties entered into a Master Lease Agreement in which Wildcat agreed to lease certain equipment from Romac.[5] From May of 2018 through December of 2019, Wildcat ordered, accepted, used, and was invoiced for the equipment and services Romac provided.[6] Wildcat received all rental equipment and services it requested from Romac, which rental equipment and services Romac provided to Wildcat on an ongoing and recurrent basis.[7]

From May 1, 2018 through December 18, 2019, Wildcat ordered, accepted, used, and was invoiced for a total of $824,016.94 in Sandcat equipment from Romac.[8] Wildcat submitted payment for each invoice received from Romac until July of 2019, when Wildcat suddenly ceased making payments for the equipment and services despite the fact that Wildcat continued to request, accept, and use the Sandcat equipment from Romac.[9] In sum, Wildcat paid $529,395.34 of the $824,016.94 owed before payments ceased.[10] On February 7, 2020, Romac sent a formal demand letter to Wildcat via certified mail.[11] In that demand letter, Romac notified Wildcat that $299,621.60 was presently due and owing by Wildcat, and requested full payment of the outstanding amount within ten days of Wildcat's receipt of the letter.[12] Additionally, Romac offered Wildcat a period of thirty days from receipt of the demand letter to notify Romac in writing if Wildcat disputed the debt or any part thereof.[13] Romac did not receive any written notice from

---

[4] McElligott Affidavit, at ¶ 6-7.
[5] ECF No. 131, Exhibit C.
[6] McElligott Affidavit, at ¶ 13; *see also*, ECF No. 131, Exhibit D, Wildcat's Responses to Romac's First Discovery Requests, at Response to Request for Admission No. 3; *see also* ECF NO. 131, Exhibit E, Transcript of Hearing on Motion for Preliminary Injunction, at Vol. I, pp. 93:09-15.
[7] McElligott Affidavit, at ¶ 10-11; *see also* ECF No. 131, Exhibit D, Wildcat's Responses to Romac's First Discovery Requests, at Response to Request for Admission No. 5.
[8] McElligott Affidavit, at ¶ 13 and ECF No. 131, Exhibit A-2, Invoice Detail Report.
[9] McElligott Affidavit, at ¶ 14-15.
[10] McElligott Affidavit, at ¶ 16 and ECF No. 131, Exhibit F.
[11] ECF No. 131, Exhibit G.
[12] *Id.*
[13] *Id.*

Wildcat regarding a dispute of the debt owed to Romac or any part thereof in response to this correspondence.[14] Further, Wildcat had previously acknowledged in November of 2019 that it was delinquent on its payments and represented that it would pay its arrearages in the "coming weeks," without raising any dispute as to the debt or the amount of the debt.[15]

Following receipt of the demand letter, Wildcat submitted one payment of $2,500 to Romac on February 18, 2020, and one additional payment of $2,500 to Romac on March 24, 2020 towards the amount due and owing on the invoices.[16] No further payments were made by Wildcat to Romac.[17] A balance of $294,621.60 remains due on the invoices for the equipment and services which Romac provided to Wildcat for the period of July of 2019 through December 18, 2019.[18] Jeffrey Weber, the owner and representative of Wildcat, testified that Wildcat still owed the debt to Romac during the September 27, 2021, preliminary injunction hearing.[19]

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[20] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "A genuine issue of material fact exists

---

[14] McElligott Affidavit, at ¶ 24.
[15] McElligott Affidavit, at ¶ 20, and ECF No. 131, Exhibit A-4, Email from Alan Brown.
[16] McElligott Affidavit, at ¶ 25-26.
[17] *Id.*, at ¶ 27.
[18] *Id.*, at ¶ 28, and ECF No. 131, Exhibit A-5, Accounts Receivable Balance Details.
[19] ECF No. 127, Transcript of Hearing on Motion for Preliminary Injunction, at Vol. I, pp. 91:25-92:05.
[20] Fed. R. Civ. P. 56(a).
[21] *Id.*

when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[22] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[23]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[24] "Credibility determinations are not part of the summary judgment analysis."[25] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[26]

### B. Louisiana Open Account Statute.

Actions on an open account under Louisiana law are governed by La. R.S. § 9:2781, which allows a claimant to recover reasonable attorney fees for the prosecution and collection of an open account claim. An open account is defined as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the

---

[22] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[23] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[24] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[25] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[26] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).

time of contracting the parties expected future transactions."[27] Whether a contract falls under the open account statute turns on whether the "total cost or price [is] ... left open or undetermined."[28] Courts also consider "(1) whether other business transactions between the parties existed; (2) whether one party extended a line of credit to another; (3) whether there are running or current dealings; and (4) whether there are expectations of future dealings."[29] However, the Louisiana Supreme Court has noted that, "[u]nder a plain reading of that statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions."[30] To prove an open account, the creditor must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony regarding its accuracy.[31] Once a creditor has established this prima facie showing of an open account, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits.[32]

### C. Romac's Prima Facie Burden.

The summary judgment record establishes, as a matter of law, the prima facie elements of an open account claim. Specifically, Romac and Wildcat agreed for Romac to lease certain rental equipment and services to Wildcat, and Wildcat agreed to pay for rental equipment and services provided by Romac, specifically the DEL manufactured Sandcat, in accordance with established stipulated rates.[33] In May of 2018, Wildcat began leasing equipment and requesting services from

---

[27] La. R.S. § 9:2781(D).
[28] *Tri–Par. Elec. Supply, Inc. v. Cypress Bend Investments, LLC*, 2012–787 (La.App. 3 Cir. 12/12/12), 105 So.3d 1036, 1039 (citation and internal quotation marks omitted); *see also Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 Fed.Appx. 297, 301 (5th Cir. 2011) (concluding that an open account existed because there was an undetermined total).
[29] *Tech. Eng'g Consultants, LLC v. Beall*, No. 11–1579, 2012 WL 4141425, at *3 (E.D. La. Sept. 14, 2012) (citing *Paz v. BG Real Estate Services, Inc.*, 921 So.2d 186, 188 (La. 2005)).
[30] *Frey Plumbing Co. v. Foster*, 996 So.2d 969, 972 (La.2008).
[31] *Id.*
[32] *Id.*
[33] McElligott Affidavit, at ¶ 5.

Romac, and Romac began invoicing Wildcat on a monthly basis for rental equipment and services that Romac provided.[34] An amount remains due and owing on invoices that were not paid. The summary judgment record includes affidavit testimony proving up the unpaid balance. Importantly, WildCat has conceded that it has not paid the invoices. Accordingly, Romac has satisfied its prima facie burden under La. R.S. § 9:2781.

### D. Wildcat's Burden to Show that the Account is Inaccurate.

The burden now shifts to WildCat to show that the account is inaccurate. WildCat offers two grounds as to why the account is inaccurate. First, Wildcat argues that there are two versions of the parties' Master Lease Agreement in the record. Turning to the two versions of the agreement in the record, the only difference in the two versions appears to be a handwritten change made to Exhibit A Terms and Condition to the agreement. In all other respects, the agreements are identical. The Terms and Conditions exhibit states the following terms:

> SandCat: Daily Rental is $2,500.00/day plus $10.00 per day for insurance carried on the Equipment by Lessor; with a 15 day/month minimum.
>
> Of the $2,500.00/day rate, Wildcat Fluids, LLC will receive a 25% ($625.00) discount/commission for placing the SandCat with one of Wildcat's MSA customers. When working on a Romac MSA customer application Wildcat will receive the same 25% discount/commission on the Romac supplied SandCat unit, there is no 15 day monthly minimum on a Romac MSA customer.

On the August 6th version of the agreement, the "with a 15 day/month minimum" provision is stricken through and initialed by Keith Wingate—a Romac representative—and there is a handwritten notation stating that "the 15 day minimum will come into effect 1 August 2018." [35] On the June 13th version of the agreement, the handwritten notation is absent but the "with a 15 day/month minimum" provision is stricken through with handwritten alteration changing the "25%

---

[34] McElligott Affidavit, at ¶ 6-7.
[35] ECF No. 4-1.

($625.00)" discount/commission to "37% ($925)."[36] Romac originally argued that the August 6th version was the correct agreement while Wildcat argued that the June 13th version was the actual agreement between the parties. Romac is now grounding its claims on the June 13th version of the agreement and the invoices sent pursuant to that agreement; Wildcat has acknowledged that the June 13th agreement reflects the parties' actual agreement.[37] Accordingly, there is no genuine question of material fact as to the governing terms of the Master Lease Agreement, and the fact that a different version of the agreement—which both parties now concede is not the parties' final agreement—does not undermine the accuracy of the open account.[38]

Second, Wildcat argues that the account is inaccurate because the rates charged in the invoices do not match the rate set forth in the Master Lease Agreement. The Court disagrees. The record reflects that Wildcat was charged a *lower* rate in the invoices but there is no evidence in the record that Wildcat ever contested these lower amounts in the invoices, nor does it contest that the invoices are "due and owing." When presented the opportunity to dispute the accuracy of the amount which Romac claimed was due, Wildcat did not dispute the amount of the debt.[39] In fact, Wildcat represented that they would pay the delinquent amounts.[40] In short, the fact that the rates in the contract differed from the lower rates charged on the invoices does not create a genuine question of material fact as to the accuracy of the account—Wildcat never disputed the accuracy of the invoices or the amount of the open account and, indeed, they do not dispute it now.

---

[36] ECF No. 131, Exhibit C.
[37] ECF No. 137, Exhibit A, Declaration of Alan H. Brown, ¶ 14.
[38] Each of the invoices submitted by Romac clearly set forth the rate which was being charged by Romac for the use of the Sandcat equipment. ECF No. 131, Exhibit F. Further, the rate charged by Romac in each of the invoices was substantially lower than the $2,500 per day rate as set forth in the Master Lease Agreement. The rates being charged were either a monthly rate of $20,975, which equates to a rate of less than $700 per day, $800 per day, or $1,000 per day. *Id.*
[39] ECF No. 131, Exhibit G, Demand Letter from Romac to Wildcat.
[40] ECF No. 131, Exhibit A-4, Email from Alan Brown, representative of Wildcat.

Finally, Wildcat argues that the Romac motion must be denied because Romac has not accounted for any credits which Wildcat might be entitled when Romac leased the Sandcat equipment to Wildcat MSA customers. However, Wildcat has offered no evidence to establish what credits, if any, are due to Wildcat.

In sum, for the foregoing reasons, the Court finds that there are no genuine disputes of material fact to preclude entry of judgment in favor of Romac on the open account claim. The Court finds that Wildcat owes Romac the sum of $294,621.60. The Court further finds that Romac satisfied the requirements of LSA-R.S. 9:2781 and is therefore entitled to reasonable attorney fees. Counsel for Romac shall submit a statement of attorney fees within thirty (30) days. Wildcat will have fourteen (14) days following submission of the statement to object to the reasonableness of the attorney fees.

THUS DONE in Chambers on this 15th day of September, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE