UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ROMAC ENVIRONMENTAL SERVICES LLC** | **CASE NO. 6:20-CV-00581 LEAD** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **WILDCAT FLUIDS LLC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is DEL Corporation's Rule 12(b)(6) Motion to Dismiss Romac Environmental Services, LLC's First Supplemental and Amended Cross-Claim (Rec. Doc. 315). Romac opposed the motion (Rec. Doc. 319), and DEL replied (Rec. Doc. 322). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that DEL's motion be granted.

### Factual Background

This is the lead case in a series of related proceedings regarding the Sandcat, a flowback tank system used in the oilfield and developed and marketed through the

joint efforts of DEL, Romac, and Wildcat Fluids, LLC.[1] Wildcat first sued DEL and Romac in April 2020 in the Southern District of Texas asserting claims for DEL and Romac's alleged theft and misappropriation and trade secret claims pertaining to use of Sandcat intellectual property. (Civil Action No. 6:20-cv-01672). In short order, both Romac and DEL filed separate suits against Wildcat for unpaid invoices arising from Wildcat's alleged rental and/or sale of certain industrial equipment. (See Civil Action No. 6:20-cv-00588 and this case, Rec. Doc. 1; 4). In June 2021, Romac asserted cross-claims against DEL alleging that all intellectual property rights to the Sandcat belonged to DEL and/or Romac and seeking defense and indemnity for Wildcat's claims pertaining to the Sandcat intellectual property. (Rec. Doc. 56). Key to Romac's claims is its July 2018 Exclusive License and Supply Agreement ("ELSA") with DEL in which DEL gave Romac the exclusive right and license to sell, market, and lease the Sandcat. (Rec. Doc. 56-2, p. 2-3).

Following a settlement conference with the undersigned in August 2022, DEL and Wildcat resolved their claims; however, Romac remains embroiled with both Wildcat and DEL over the Sandcat intellectual property. Romac contends that under its ELSA with DEL, Romac owns the exclusive right to use, sell and lease the DEL-manufactured Sandcat units and has expended vast amounts of time, energy, and

---

[1] See the Court's Memorandum Ruling at Rec. Doc. 167 for an overview of the facts and the three parties' various claims.

money marketing and promoting the Sandcat equipment in the oil and gas industry. Romac argues that Wildcat's use of the Sandcat mark pursuant to Wildcat's settlement agreement with DEL is infringing on Romac's rights as the owner of the exclusive right to use, sell, market, and lease the DEL-manufactured Sandcat units.

Following receipt of the Wildcat/DEL settlement agreement which purportedly allowed Wildcat use of the Sandcat intellectual property, Romac amended its cross-claims against DEL to assert claims for breach of the ELSA (Count I), trademark infringement (Count II), Louisiana unfair trade practices (Count III), and detrimental reliance (Count IV). (Rec. Doc. 305). DEL moves to dismiss Counts II and III on the grounds that Romac lacks standing as a licensee to state claims for trademark infringement against DEL, the trademark owner.

## Law and Analysis

### I. Law applicable to Rule 12(b)(6) and documents considered.

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal

3

quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

    Ordinarily, in ruling on a Rule 12(b)(6) motion, the Court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The Court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial

4

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). In determining whether Romac has stated claims against DEL, the Court shall consider Romac's Cross-Claim (Rec. Doc. 56), the documents attached thereto, including the ELSA (Rec. Doc. 56-2), Romac's First Supplemental and Amending Cross-Claim (Rec. Doc. 305), and the documents attached thereto, including the Wildcat/DEL Settlement Agreement (Rec. Doc. 305-1). The Court shall also consider prior rulings in the record, including the Court's findings at Rec. Doc. 167 as matters of public record.

## II. Whether Romac has standing to assert trademark infringement claims.

DEL seeks to dismiss Romac's trademark infringement and unfair trade practices claims (Counts II and III) for the sole reason that Romac, as DEL's licensee, does not have a legal right to assert claims for trademark infringement against the owner of the mark, the licensor.

The owner of a trademark may license its mark's use to distributors and licensees; however, the licensee does not thereby acquire ownership of the mark. *ICEE Distributors, Inc. v. J&J Snack Foods Corp.,* 325 F.3d 586, 598 (5th Cir. 2003); § 32:18. Federal question jurisdiction—Licensee standing to sue—Infringement of a registered mark, 6 *McCarthy on Trademarks and Unfair Competition* § 32:18 (5th ed.). Thus, absent a true assignment of rights, a mere

5

exclusive licensee lacks standing to bring Lanham Act claims. *Neutron Depot, L.L.C. v. Bankrate, Inc.,* 798 F. App'x 803, 806 (5th Cir. 2020).

DEL indisputably owns the Sandcat mark. See discussion at Rec. Doc. 167, p. 12-16. Romac did not allege that DEL has ever assigned its rights to Romac, and the ELSA does not contain an assignment. In fact, the ELSA states: "nothing in this Agreement will function to transfer any of DEL's intellectual property rights associated with the Sandcat to Romac, and DEL retains ownership of all such rights." (Rec. Doc. 56-2, p. 2). Because Romac, as DEL's licensee, does not own the Sandcat mark, Romac lacks standing to sue for trademark infringement. The Court is unpersuaded by Romac's unsubstantiated arguments contrary to the Court's early findings that DEL owns the Sandcat mark (see Rec. Doc. 167), contrary to its own statement that "DEL is the owner of the Sandcat mark" (Rec. Doc. 304, ¶8), and contrary to the ELSA which explicitly recognizes DEL's ownership of the intellectual property (Rec. Doc. 56-2, p. 2).

Nevertheless, Romac argues it has acquired a protectable interest in the term "Sandcat" when used as a service mark, which it distinguishes from "Sandcat" as a trademark. As explained in the preeminent treatise, *McCarthy on Trademarks*, the Lanham Act and trademark law generally distinguish between trademarks and service marks, the latter used as a designation specifically pertaining to services rather than goods. § 4:7. "Service Marks", 1 *McCarthy on Trademarks and Unfair*

6

*Competition* § 4:7 (5th ed.), citing Restatement Third, Unfair Competition § 9, comment f (1995).

Romac's amended cross-claim does not allege the distinction it urges the Court to draw. Indeed, Romac's cross-claim is replete with allegations of Sandcat as a product, not a service. See e.g. Rec. Doc. 305, ¶22 ("DEL gave Romac the exclusive right to purchase, lease and use certain DEL equipment," namely the Sandcat, which is defined as a product.); ¶24-26 describing the Sandcat as equipment, *inter alia*.

Likewise, Romac's claims do not survive beyond the existence of the ELSA, which does not grant Romac the right to use any explicitly service mark. Romac has not cited any evidence in the record or even alleged that the Sandcat mark can be parsed into the trademark underlying this litigation and some undefined, unregistered service mark. Even assuming in the light most favorable to Romac that the Sandcat mark could conceivably include a separate service mark, ownership of the mark requires proof of senior use of the mark. (See discussion and law cited at Rec. Doc. 167, p. 9-10). Romac alleged no facts supporting that it was a senior user of a separate service mark. The Court is further persuaded by DEL's position that parsing the Sandcat mark into separate trademarks and service marks undermines a central purpose of trademark law to prevent market and consumer confusion. To allow Romac to stake a separate right to a Sandcat service mark, absent an explicit

7

agreement among the parties, would result in tremendous confusion. Hence, Romac has not stated a trademark claim for which it has standing on the theory that it possesses a protectable service mark in the Sandcat name.

### III. Whether Romac stated a LUTPA claim.

DEL next seeks dismissal of Romac's Count III for Louisiana Unfair Trade Practices for the same reasons that Romac lacks standing to assert a trademark infringement claim. Although "the requirements for a claim under LUTPA mirror those of the Lanham Act" and "[the] likelihood of confusion is the essential ingredient for claims under both LUTPA and the Lanham Act" *(Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 490 (5th Cir. 2008)), Romac seeks to save its LUTPA claims by arguing that its claims more broadly seek damages for DEL's alleged misleading and deceptive conduct in allowing Wildcat to use the Sandcat mark. As the Fifth Circuit has emphasized, LUTPA claims cannot rest upon permissible business practices.

> LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.

*Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993) (citations omitted).

Romac's LUTPA claim rests solely on the DEL/Wildcat settlement agreement wherein (Romac alleges) DEL "knowingly and intentionally allow[ed] Wildcat to use the Sandcat mark" and "is misleading and deceiving the relevant consumers as to the source of the Sandcat units, and thereby permitting Wildcat's goods and services to be confused with those of Romac, and falsely suggesting a connection between Wildcat and Romac." In other words, Romac condemns DEL for its conduct of entering into a contract with a competitor, which Romac contends offends the ELSA. The Court finds that, to the extent Romac asserts general LUTPA claims beyond the confines of the Lanham Act, Romac's claims are a simple breach of contract claim. Despite its use of buzzwords (e.g. "misleading," "deceiving"), Romac has not sufficiently alleged the type of egregious conduct LUTPA claims are intended to rectify. Compare e.g. *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir. 2002), wherein the plaintiff specifically alleged facts with "deceptive and unethical undertones." Accordingly, the Court finds that Romac has failed to state a LUTPA claim against DEL.

IV. **Whether Romac stated a claim for false advertising.**

Romac seeks to revive claims under the Lanham Act by attempting to define them as false advertising claims, relying exclusively on a Second Circuit case.[2]

---

[2] Rec. Doc. 319, p. 14, citing *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 277 F.3d 253, 255 (2d Cir. 2002).

9

Section 43(a) of the Lanham Act provides a remedy against "[a]ny person who…uses…any…false or misleading description of fact, or false or misleading representation of fact, which…misrepresents the nature, characteristics, [or] qualities…of his or her or another person's goods." 15 U.S.C. §1125(a). In order to state a claim under §43(a), the plaintiff must allege facts sufficient to show: (1) A false or misleading statement of fact about a product; (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue. *IQ Prod. Co. v. Pennzoil Prod. Co.,* 305 F.3d 368, 375 (5th Cir. 2002).

Romac argues that "by permitting Wildcat to use the Sandcat mark in connection with vastly different and inferior equipment, DEL is intentionally and knowingly causing, and inducing others to make statements or representations that cause confusion, mistake[,] and deception…" (Rec. Doc. 319, p. 14). In other words, Romac suggests the DEL/Wildcat settlement agreement, which merely permits Wildcat to use the Sandcat name, is sufficient to induce others to make confusing

statements or representations. The Court finds this is a substantial leap from an affirmative false or misleading statement as required by the Lannham Act.

False advertising claims require allegations of a misrepresentation about the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." Romac relies upon DEL's testimony that Wildcat's flowback equipment is different and inferior to the Sandcat. (Rec. Doc. 305, ¶39-41). Yet, Romac agrees. Thus, its argument in support of a claim for false advertising, which requires a misrepresentation, is counterintuitive. Romac did not state a claim for false advertising under the Lanham Act.

## Conclusion

For the reasons discussed herein, the Court recommends that DEL Corporation's Motion to Dismiss Romac's First Supplemental and Amended Cross-Claims for Contributory Trademark Infringement and LUTPA Violation (Rec. Doc. 315) be GRANTED. Romac's claims against DEL for trademark infringement (Count II) and Louisiana Unfair Trade Practices (Count III) should be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 15th day of September, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE